## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

|  |  |  |
|---|---|---|
| | § | |
| THERESE M. SPENCER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:05-CV-0133-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 14, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on March 1, 2006, and Defendant filed her brief on March 29, 2006.  The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.  This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings.

### I.  STATEMENT OF THE CASE

Plaintiff protectively filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on April 23, 2001, alleging disability

beginning January 4, 2001.  Tr. 10, 459, 720-25.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 726-37.  Plaintiff timely filed a Request for Hearing by Administrative Law Judge, and this matter came for hearing before the Administrative Law Judge ("ALJ") on August 13, 2002.  Tr. 459, 742-61.  Plaintiff, represented by a non-attorney, testified in her own behalf.  Tr. 745-59.  Plaintiff's mother-in-law, Joyce Smith, also testified.  Tr. 759-60.  Michael Driscoll, a vocational expert ("VE"), appeared but did not testify.  The ALJ issued a decision unfavorable to Plaintiff on September 24, 2002.  Tr. 456-66.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements on January 4, 2001, through the date of his decision and Plaintiff had not engaged in substantial gainful activity at any time since January 4, 2001.  Tr. 460.  Plaintiff has "severe" impairments, including degenerative disk disease, chronic pain, obesity, gastroesophageal reflux disease and a Chiari I malformation.  *Id.*  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p (July 2, 1996)("96-7p").  Tr. 463.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible.  Tr. 464.

The ALJ found that Plaintiff could not return to her past relevant work as a seasonal salesperson, a retail manager, and a daycare worker. Tr. 465. He noted that Plaintiff was considered a "younger" person with a high school education and one year of college. Tr. 465; *see* 20 C.F.R. §§ 416.963, 416.964.

Because the ALJ found that Plaintiff had no significant nonexertional and her exertional RFC and relevant vocational factors coincided with the Rules on the Medical-Vocational Guidelines of 20 C.F.R. Part 404, Subpt P, App. 2, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 465-66.

Plaintiff submitted a Request for Review of Hearing Decision/Order on December 23, 2002. Tr. 470-78. On September 5, 2003, the Appeals Council issued its order remanding the case to the ALJ for further proceedings, including another hearing. Tr. 482-85.

This matter came for hearing before another ALJ on January 27, 2004. Tr. 10, 762-88. Plaintiff, again represented by a non-attorney, testified in her own behalf. Tr. 764-70. Dr. Susan Blue, a medical expert ("ME") and Carol Bennett, a vocational expert ("VE"), also appeared and testified. Tr. 770-87. A second supplemental hearing was held on March 24, 2004, with the Plaintiff and Dr. John Simonds, an ME, appearing and testifying. Michael Driscoll, a VE, appeared but did not testify. The ALJ issued a decision unfavorable to Plaintiff on June 17, 2004. Tr. 7-24.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements on January 4, 2001, through the date of his decision and Plaintiff had not engaged in substantial gainful activity at any time since January 4, 2001. Tr. 11. Plaintiff has "severe" impairments, including degenerative disk disease, a history of thoracic outlet syndrome and peripheral entrapments, chronic pain, obesity, gastroesophageal reflux disease and a Chiari I malformation causing migraine headaches, and diagnosed depression. *Id*. Plaintiff's severe

impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not credible in the least. Tr. 21.

The ALJ found that Plaintiff could not return to her past relevant work as a merchandise marker/stocker, a retail store manager, and a daycare teacher. Tr. 22. He noted that Plaintiff was considered a "younger" person with a high school education and one year of college. Tr. 22; *see* 20 C.F.R. §§ 416.963, 416.964.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of simple, repetitive light work activity, limited to jobs that: afford the opportunity to alternate between sitting and standing; do not require standing and/or walking for more than 4 hours during an 8-hour work day; only occasionally require overhead reaching; require lifting/carrying no more than 5 pounds frequently and 20 pounds occasionally; do not require crawling or climbing ladders or scaffolds; and only occasionally require climbing stairs. Tr. 21. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 23. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of assembler, with 8,100 jobs in Texas and 140,000 jobs nationally; hand packer, with 5,000 jobs in Texas and 100,000 jobs nationally; and inspector, with 4,000 jobs in Texas and 70,000 jobs

nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 24.

On July 14, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

-5-

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.   In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 23-24.

## III.   DISCUSSION

Plaintiff argues that the ALJ erred in making his RFC assessment in several respects.  First, she argues that the ALJ erred by failing to recognize all of the limitations imposed by her impairments as established in the record.  Second, she argues that the ALJ erred by relying upon the testimony of the medical advisors and failed to give appropriate weight to the opinions and conclusions of her treating physicians with regard to her impairments and their effect on her ability to work.  Finally, Plaintiff argues that the ALJ erred in making his credibility determination. Because these issues are inextricably interrelated, the court considers Plaintiff's claims of error together.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The record demonstrates that the ALJ found that Plaintiff retained the RFC to perform simple, repetitive work at the light exertional level, limited to jobs which afford the opportunity to alternate between sitting and standing; which do not require standing and/or walking for more than four hours of an 8-hour work day; which only occasionally require overhead reaching; which require lifting/carrying no more than 5 pounds frequently and 20 pounds occasionally; which do not require crawling or climbing ladders or scaffolds; and which only occasionally require climbing stairs.  Tr. 21.  Plaintiff argues that this RFC determination is not supported by substantial evidence because

it does not reflect all of the limitations imposed by her impairments, particularly her right hand and arm problems, as well as the limitations imposed by her pain and mental impairment.  Plaintiff argues that in making this finding, the ALJ inappropriately failed to consider the opinions of her treating physicians, as well as her subjective allegations, and relied instead on the opinions of non-examining, non-treating physicians.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  SSR 96-5p (July 2, 1996)("SSR 96-5p").  The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p")(emphasis in original).  The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).   In making  the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record.  SSR 96-8p.

In his opinion the ALJ noted that Plaintiff's treating pain management specialist indicated in January 2001 that an EMG study on her right upper extremity had produced normal results, although diagnostic imaging indicated a small central disk protrusion at C6-7, which resulted in minimal compression of the theocal sac.  Tr. 12.   The ALJ noted that Plaintiff was treated with cervical epidural steroid injections for right arm pain, but she continued to report numbness and tingling in that extremity.  *Id*.  He noted that a series of epidural steroid injections and cervical facet injections were not successful in alleviating her pain.  *Id*.  He noted that Plaintiff continued to complain of neck and right upper extremity pain/numbness and was evaluated by an orthopedic surgeon in May 2001.  *Id*.  He noted that Plaintiff was referred to a neurologist, who diagnosed

moderate right thoracic outlet syndrome, and referred her in turn to Dr. Orenstein, a physician and plastic surgeon who specialized in upper extremity surgery. Tr. 13. The ALJ noted that Dr. Orenstein performed a series of surgical procedures to try to alleviate Plaintiff's pain. *Id*.

The ALJ noted that a June 2002 neurological evaluation indicated that Plaintiff's right arm was weak, either due to actual muscle weakness or reduced effort secondary to pain, and that Plaintiff had a positive Tinel's sign at the right carpal tunnel. T. 15. The ALJ noted that Plaintiff underwent additional surgery to try to relieve her pain. *Id*. Plaintiff was later referred to another pain management specialist who noted that Plaintiff did complain of "some degree of radiculopathy into the right lower extremity." *Id*. This physician found no "clear cut pathology" for Plaintiff's pain symptoms, although he opined that much of it may be related to facet problems due to obesity. *Id*.

The ALJ also noted that Plaintiff complained to her neurologist around April 2003 of being weak and numb on the entire right side of her body and dropping things with her right hand. Tr. 17. The neurologist noted that upon examination, Plaintiff had decreased right grip strength with a mildly positive Tinel's sign at the right carpal tunnel and 3/5 strength of the right abductor pollicis brevis muscle. *Id*. At an appointment in May 2003, Plaintiff's neurologist noted slightly decreased right grip strength, tenderness in the left mid-trapezius, with fair to good strength in the upper extremities. *Id*. The ALJ noted that in January 2004, Plaintiff reported to her neurologist that she was having increased difficulty with the right arm and hand, and she was noted to have weak right grip and right abductor pollicis brevis muscle and some tingling and pain in her right arm with tilting her head to the left. Tr. 18. This physician opined that Plaintiff might have recurrent thoracic outlet or carpal tunnel syndrome and recommended further testing. *Id*.

The ALJ noted that one of the medical experts, Dr. Blue, a neurologist, testified that Plaintiff's problems appeared to stem from chronic lower back, neck, and right upper extremity pain,

obesity, migraine headaches, and gastroesophageal reflux disease. *Id*.  The ALJ noted that Dr. Blue opined in her testimony that Plaintiff retained the RFC to lift, push and pull objects weighing up to 20 pounds occasionally and five pounds frequently; to walk for about one hour at a time for a total of four hours in an 8-hour workday; and to occasionally climb, lift objects over her head, and reach over her head.  Tr. 18-19.  The ALJ noted that another of the medical experts, Dr. Simonds, a psychiatrist, opined in his testimony that Plaintiff probably has problems fingering objects, should avoid heavy lifting, has no fine motor skills in her right hand, should be confined to work involving minimal details because of moderate concentration deficits, and should have no problem standing or walking for any length of time.  Tr. 19.  The ALJ ultimately accepted Dr. Blue's testimony regarding the limitations imposed by Plaintiff's physical impairments and incorporated them into his RFC finding and accepted Dr. Simonds' opinion as to the limitations imposed by Plaintiff's mental impairments, given their respective areas of specialization.  Tr. 19.

In so finding, the ALJ indicated that he rejected the opinion of Dr. Orenstein. Tr. 13-14.  The ALJ noted that Dr. Orenstein had opined that Plaintiff has continued to have decreased grip strength, mobility and sensation and limited ability to lift/carry and handle objects, and she was limited to less than a full range of sedentary work.  Tr. 13.  The ALJ noted that Dr. Orenstein opined that Plaintiff could not stand/walk for more than a total of four hours per day and had significant postural limitations.  14.  The ALJ indicated that he was declining to accept Dr. Orenstein's opinion as to disability based on the length of the treating relationship (approximately seven months) and the fact that at the time that Dr. Orenstein was treating Plaintiff, she underwent multiple surgical procedures, which may have temporarily limited her capacity for work activity.  Tr. 13-14.  He noted that Dr. Orenstein is a plastic surgeon who specializes in upper extremity surgery and thus his opined was based on factors "outside the doctor's areas of specialization."  Tr. 14.  The ALJ further stated that

"there is no objective clinical evidence from any other source corroborating this degree of debilitation." *Id*.

Plaintiff's arguments are thus related and intertwined. She alleges that the ALJ failed to notes the limitations imposed by her impairments, improperly failed to give appropriate weight to the opinions of her treating physicians, particularly Dr. Orenstein, as to the limitations imposed by her impairments, and failed to appropriately consider her subjective allegations in making the RFC and credibility determinations. Because these issues are so interrelated, I address them together.

The ALJ decision is replete with references to Plaintiff's complaints concerning her right upper extremity. In addition to Plaintiff's subjective complaints and reports to her physicians, objective examinations demonstrated decreased grip strength, some weakness, positive Tinel's signs at the right carpal tunnel, and tenderness. Indeed, the record demonstrates that Plaintiff has consistently reported problems with pain, numbness, loss of grip strength, and some loss of function of her right upper extremity to her various treatment providers. *See*, *e.g.,* Tr. 268 (right upper extremity pain), 275 (right hand went numb and she dropped a bottle of medication), 276 (numbness and tingling of right upper extremity), 283-85, 291-92, 297-98, 304-05, 672. Plaintiff's treatment with Dr. Heath and PA Kiser, who treated Plaintiff for pain, are particularly replete with Plaintiff's reports of tingling, numbness, and pain in her right upper extremity and detail the numerous measures taken to try to deal with these symptoms. *See id.* Even the medical advisor, Dr. Simonds, opined that Plaintiff would basically have no fine motor skill with the right hand.

Plaintiff argues that the ALJ failed to give appropriate weight to the opinion of her treating physician and relied upon the testimony of the medical advisors in making his RFC assessment and determining the limitations imposed by her impairments.

A "medical advisor" is a neutral consultant who, at the request of the Social Security Administration, reviews a claimant's medical records, explains or clarifies information reflected

-10-

therein, and expresses expert opinions as to the nature and severity of impairments and whether such impairments equals the criteria of any impairment in the Listing of Impairments.   20 C.F.R. §§ 404.1527(f)(2)(iii), 416.912(b)(6), and 416.927(f)(2)(iii).  When a medical professional functions as an expert witness in the course of an evidentiary hearing before an ALJ, Social Security Ruling 96-6p designates the medical professional as a "medical expert."  Social Security Ruling 96-6p (July 2, 1996)("SR 96-6p").  Clearly, an ALJ may rely upon testimony of a medical adviser when evaluating the nature and extent of a claimant's impairments. *Richardson v. Perales,* 402 U.S. 389, 408 (1971).

In *Masterson*, the Fifth Circuit noted that the ALJ relied upon the testimony of the ME as to the limitations imposed by the claimant's mental impairment. *Masterson*, 309 F.3d at 270 (noting that the ME testified that the claimant experienced slight restrictions on daily activities, slight to moderate difficulties in social functioning, and seldom to often-experienced deficiencies of concentration).   In *Leggett*, the Fifth Circuit noted that the ALJ relied in part upon the testimony of the ME, who opined, based on the evidence in the record, that the claimant was capable of performing sedentary work. *Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir. 1995).  As noted above, in *Ripley*, the Fifth Circuit specifically noted that the absence of a medical source statement "does not, *in itself*, make the record incomplete."  *Ripley*, 67 F.3d at 557 (emphasis supplied).  Reading these authorities together, it is apparent that reliance upon the ME testimony in determining Plaintiff's limitations was not, in and of itself, error nor did it render the RFC assessment inherently erroneous.  The court does not find that the ALJ may not rely upon the testimony of the ME, based on the medical evidence in the record, in determining the limitations imposed by the Plaintiff's impairments and in making his RFC assessment.   Applicable authority demonstrates that the testimony of the ME may be used by the ALJ.

However, in this matter, the ALJ rejected the opinion of Dr. Orenstein, a treating specialist, on the limitations imposed by her right upper extremity problem. The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Under the applicable regulations, unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 416.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456. Plaintiff argues that the ALJ failed to show good cause for discounting the weight of Dr. Orenstein's opinion and instead relied upon the conclusory opinion of a non-examining medical expert who had not reviewed all of the evidence.

To the extent that Dr. Orenstein opined that Plaintiff had "too much pain to work" and further opined that Plaintiff was "unable to work at this time," such opinion was entitled to no special significance. *See* Tr. 360-61. This is because "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the

Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).

Dr. Orenstein diagnosed Plaintiff with chronic pain syndrome and thoracic outlet syndrome. Tr. 357. He noted that Plaintiff's symptoms included pain, dizziness, fatigue, and the inability to perform adult daily living activities. *Id*. He noted that Plaintiff displayed decreased grip strength, decreased mobility, and decreased sensation. *Id*. He noted that Plaintiff's emotional factors did contribute to the severity of Plaintiff's symptoms, and Plaintiff constantly experienced pain sufficient to interfere with attention and concentration. *Id*. He opined that Plaintiff was limited to occasionally lifting or carrying five pounds, could not perform overhead lifting, and was severely limited in reaching, fingering, pushing/pulling, handling, and feeling. Tr. 358. He opined that Plaintiff could stand/walk up to four hours and could do so continuously during an 8-hour work day. *Id*. He indicated no limitations on sitting and noted that Plaintiff believes that she cannot walk. Tr. 359. He indicated that Plaintiff should never climb, balance, stoop, crouch, kneel, or crawl and further opined that because of pain, Plaintiff would still be unable to complete an 8-hour work day on a sustained basis even if the noted limitations were followed. *Id*.

Dr. Orentstein's RFC questionnaire was dated May 15, 2002. The ALJ indicated that he discounted his opinion in part because Dr. Orenstein only treated Plaintiff for approximately seven months, while performing surgeries which might have reduced her ability to perform work. However, this opinion was consistent with Plaintiff's later reports from other treating physicians, such as Dr. Dozier and Dr. Anderson. *See*, e.g., Tr. 427-32, 554-58, 659-65. The ALJ indicated that Dr. Orenstein's opinion that Plaintiff could not stand/walk for more than four hours per day and had significant postural limitations was based on Plaintiff's report. However, the ALJ incorporated the same standing/walking limitation and certain postural limitations into his RFC assessment, despite no other evidence in the record. The ALJ noted that Dr. Orenstein specializes in upper

extremity surgery and used this as basis for rejecting his opinion on functional limitations "outside of the doctor's area of specializiation."   However, the ALJ also did not accept this treating specialist's opinion on the limitations imposed upon Plaintiff's functional use of her upper extremities.

The ALJ's rejection of Dr. Orenstein's opinion and the lack of any functional limitations based on Plaintiff's right upper extremity problems in the RFC assessment is particularly troubling where, as in this case, Plaintiff has consistently complained of right upper extremity problems to numerous treating sources; her treating sources have noted objective findings upon examination consistent, at least in part, with Plaintiff's subjective claims; and there is no other opinion from a treating source on the limitations imposed by Plaintiff's impairments.   While the ALJ was clearly entitled to consider the testimony given by the medical experts, he rejected the opinion of a treating specialist on the limitations imposed by the impairments for which the claimant was treated and instead adopted the opinion of the non-examining medical experts.   Plaintiff correctly notes that this case is not a case with competing first-hand medical evidence, nor is this is case where the ALJ has weighed the opinion of various treating or examining physicians.   *See Newton*, 209 F.3d at 455-56.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."   *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ.   *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.*  However, in weighing the evidence, the ALJ is not free to reject the uncontroverted opinions of a treating physician as to the limitations imposed by Plaintiff's impairments, solely because he has a "different interpretation of the evidence." *See Frank*, 326 F.3d at 622 (where the Fifth Circuit

noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments).

I find that the ALJ erred by failing to appropriately consider and weigh the opinion of Dr. Orenstein, a treating specialist, on the limitations imposed by Plaintiff's impairments. I further find that the ALJ failed to consider the limitations imposed by Plaintiff's right upper extremity problems. I further find that the ALJ failed to appropriately consider Plaintiff's subjective allegations as to the limitations imposed by her impairments. The ALJ's RFC determination and his decision are not supported by substantial evidence.

Because I find that the RFC determination is not supported by substantial evidence, I do not reach Plaintiff's other allegations regarding the ALJ's failure to consider her subjective allegations in making his credibility determination and RFC finding. However, reconsideration of the opinion of Plaintiff's treating specialist and of the limitations imposed by Plaintiff's impairments will necessarily involve reconsideration of Plaintiff's subjective allegations about the limitations imposed by her impairments.

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge reverse the Commissioner's decision and remand this matter for further proceedings in accordance with this recommendation.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify

those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 1st day of September, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**